## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**DARNELL JACOB WILLIAMS,**          :

                                     :

     **Plaintiff**          **CIVIL ACTION NO. 3:15-1645**

                                     :

     **v**          **(JUDGE MANNION)**

                                     :

**JOSEPH D. MACUT, <u>et</u> <u>al</u>.,**

                                     :

     **Defendants**          <u>**MEMORANDUM**</u>

## I.   <u>Background</u>

Plaintiff, Darnell Jacob Williams, an inmate confined in the Forest State Correctional Institution, Marienville, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). Williams challenges the medical care he received as an inmate at his former place of confinement, the Dauphin County Prison. The named Defendants are Joseph D. Macut, Dauphin County Prison Physician Assistant; Prime Care Medical Inc.; and Prison Medical Staff. <u>Id</u>. Plaintiff's allegations of fact are taken from Plaintiff's complaint and Plaintiff's attached medical records. (<u>See</u> Doc. 1 at 2-19).

On June 3, 2013, Plaintiff was seen by Defendant Macut, complaining of pain in his left ring finger, which he claimed he jammed over a week ago while playing basketball at the Dauphin County Prison. <u>Id</u>. Defendant Macut's

assessment was a contusion of the finger, but needed to rule out a fracture. Id. As such, he ordered an x-ray, Motrin and that the finger be buddy taped. Id.

On June 4, 2013, Plaintiff was again seen by Defendant Macut for the follow up on the x-ray. Id. The x-ray was noted as being negative, however, the finger had mild swelling and tenderness. Id. The buddy tape was discontinued. Id.

On July 3, 2013, Plaintiff was seen by Defendant Macut for complaints of swelling at the site of his left ring finger. Id. Defendant Macut noted questionable swelling and no erythema. Id. A follow up x-ray was ordered. Id.

On July 10, 2013, Plaintiff was again seen by Defendant Macut for the follow up x-ray results, which were negative for fracture. Id. At this time Defendant Macut recommended Plaintiff be referred to Dr. William Young, the medical director for Prime Care at Dauphin County Prison. Id.

On July 12, 2013, Plaintiff was evaluated by Dr. Young for a second opinion. Id. Dr. Young noted that the finder joint could be bent passively, but not actively. Id. The x-ray noted as showing no fracture, however, Dr. Young's assessment was left finger derangement and he recommended an orthopedic evaluation. Id.

On August 15, 2013, Plaintiff was evaluated at the Kline Health Center Orthopedic Clinic. The physician's report noted that although x-rays were negative, a recommendation was made to see a hand specialist. Id.

Plaintiff alleges that he was seen by the hand specialist on August 20, 2013, who recommended immediate surgery due to a pulled ligament. Id.

On September 10, 2013, Plaintiff underwent surgery for a flexor digitorum excision with repair of A-4 pulley and fusion of the distal interphalangeal joint. Id. Following the surgery, it was recommended that Plaintiff follow up in the orthopedic clinic at the Kline Health Center on September 24, 2013. Id. There was no mention of physical therapy in the Operative Report and Assessment Plan. Id.

On September 11, 2013, Plaintiff was seen by Paul Navarro, a nurse practitioner. Id. Motrin was discontinued, but Naproxen and Keflex were ordered to address pain and to prevent infection. Id.

On September 16, 2013, Plaintiff was seen by Toby Catone, a physician's assistant, as a follow up to the his surgery. Id.

On September 24, 2013, as ordered, Plaintiff was seen in the Kline Health Center Orthopedic Clinic, for a follow up. Id. Plaintiff had his splint and sutures removed. Id. He was permitted to perform passive range of motion

exercises, and follow up was scheduled in approximately four weeks. Id. There was no indication that physical therapy was needed or recommended. Id.

On October 7, 2013, Plaintiff was seen by Dr. Young for a follow up. Id. Plaintiff "was wondering why they didn't schedule [him] for physical therapy after [his] finger." Id. Dr. Young noted that passive range of motion exercises were permitted and that Plaintiff had a follow up with the surgeon soon. Id.

On October 24, 2013, Plaintiff was seen by the Kline Health Center Orthopedic Clinic for a follow up. Id. Plaintiff was examined and was provided hand exercises. Id. There was no referral or recommendation for physical therapy. Id.

On August 25, 2015, Plaintiff filed the instant action in which he seeks compensatory and punitive damages for "the permanent injuries and damages so sustained by PA-C Joseph D. Macut and Prime Care, Inc." whose "negligence and reckless acts of negligence and medical indifference caused pain, suffering and denial of adequately, prompt medical care and treatment as well as follow up treatment, which complainant so suffered and not from any voluntary actions or contributions on Plaintiff's part; thus based on the misdiagnosis of severe injury incurred; pain and suffering,

malfeasance, and gross medical indifference and delay in treatment and care...". Id.

Currently pending before the Court is a motion to dismiss Plaintiff's complaint, filed on behalf of Defendants Macut and Prime Care Medical. (Doc. 25). The motion is fully briefed and is ripe for disposition. For the following reasons, the Court will grant the motion.

## II.  **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under

the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed App'x. 183 (3d Cir. 2008).

## III.   Discussion

### A.  Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d

326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth

Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received

treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The allegations in Plaintiff's complaint, and his supporting documentation, clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff has been continually assessed, monitored and treated since his first sick call visit on June 3, 2013.

At best, Plaintiff's complaint demonstrates his disagreement with the type and timeliness of the treatment rendered. However, his mere disagreement with the course of action that the medical department took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)).

This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse.

Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Plaintiff does not suggest that the institution's medical staff were aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a pro se complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it). Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

Moreover, to the extent that Plaintiff believes that he has been

misdiagnosed, mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. Durmer, 991 F.2d at 67. Once again, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110.

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir. 2002). Since it is clear from Plaintiff's complaint, and supporting documentation, that Plaintiff received adequate medical treatment throughout his incarceration at the Dauphin County Prison, and merely disagrees with the treatment he received during this time, the Court finds that amendment on these claims would be futile.

## B.   Equal Protection

It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination.

Snowden v. Hughes, 321 U.S. 1, 8 (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir. 1987), cert. denied, 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors. See, e.g., Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), aff'd, 972 F.2d 1330 (3d Cir. 1992).

Aside from listing it as a federal law that Plaintiff claims was violated, Williams fails to allege facts from which it can be concluded that any of the Defendants engaged in intentional or purposeful discrimination or that he was treated differently from similarly situated individuals on the basis of his race or some other impermissible reason. Consequently, his equal protection claim will be dismissed.

IV.   **Conclusion**

For the reasons stated above, the motion to dismiss filed on behalf of

Defendants, Joseph D. Macut, and Prime Care, Inc., will be granted. Although not a moving Defendant, the Court finds that based upon the foregoing, Defendant, Prison Medical Staff, is also entitled to dismissal pursuant to of 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 19, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1645-01.wpd

14